2001-NMCA-081

33 P.3d 679

Roy **KROPINAK**, Plaintiff–Appellant,

v.

**ARA HEALTH SERVICES, INC., d/b/a Correctional Medical Systems,** Defendant–Appellee.

**No. 21,311.**

Court of Appeals of New Mexico.

Sept. 13, 2001.

Ray Twohig, Ray Twohig, P.C., Albuquerque, NM, for Appellant.

Karen C. Kennedy, Deborah D. Wells, Kennedy, Moulton & Wells, P.C., Albuquerque, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} In this termination of a professional services contract case, we review our Supreme Court's holding in *Melnick v. State Farm Mutual Automobile Insurance Co.,* 106 N.M. 726, 749 P.2d 1105 (1988), declining to recognize a claim for breach of an implied covenant of good faith and fair dealing in an at-will employment contract. We reiterate that New Mexico law does not permit such a claim when the parties have expressed their intent in an unambiguous written contract. We affirm the district court's grant of summary judgment dismissing the claim for breach of an implied covenant of good faith and fair dealing.

*Facts*

{2} The facts in the summary judgment record are undisputed. Defendant ARA Health Services, Inc., d/b/a Correctional Medical Systems (CMS) held a contract with the State of New Mexico Department of Corrections to provide medical services to inmates at the New Mexico State Penitentiary. Plaintiff Dr. Roy Kropinak, a licensed physician, entered into a separate agreement with CMS to provide medical services as an independent contractor under CMS's contract with the Department of Corrections. The term of the agreement was for one year from February 19, 1990 to February 18, 1991, with the ability to renew for one-year terms thereafter "unless either party gives written notice to the other party of its intention to terminate ... no later than sixty (60) days prior to the last day of the then-existing term." (Emphasis deleted.) The agreement further stated that "either party may terminate this agreement at any time with or without cause by giving the other party sixty (60) days prior written notice of such termination." CMS provided Plaintiff a letter dated October 20, 1993, terminating the agreement effective December 19, 1993.

{3} In his affidavit submitted in response to the motion for summary judgment, Plaintiff states that during his employment, he observed CMS staff engage in "many unsafe, unethical, possibly illegal, and sub-standard medical practices and procedures." Plaintiff's employment responsibilities included reporting and cooperating with persons investigating compliance with the consent decree in the federal civil rights case which concerned the adequacy of medical care provided New Mexico prisoners. He reported deficiencies in medical care to the expert retained by the special master in the consent-decree litigation and was interviewed by an independent licensed physician retained by the Department of Corrections to investigate allegations of medical treatment deficiencies made by Plaintiff and others. CMS terminated Plaintiff the day following his interview with the

independent physician. CMS did not state a reason for the termination. The gravamen of Plaintiff's complaint is that CMS violated the implied covenant of good faith and fair dealing in its agreement with Plaintiff by terminating Plaintiff for reporting the deficiencies in medical services provided inmates and cooperating with the independent physician.

{4} The district court granted CMS's motion for summary judgment. Plaintiff's appeal raises the sole issue of whether New Mexico law entitles him to raise a claim based on the implied covenant of good faith and fair dealing. Because Plaintiff's position on appeal raises a question of law arising out of undisputed facts, we apply a de novo standard of review. *Farmers Ins. Co. v. Sedillo,* 2000–NMCA–094, ¶ 5, 129 N.M. 674, 11 P.3d 1236.

*Application of Melnick v. State Farm Mutual Automobile Insurance Co.*

{5} Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties. *Watson Truck & Supply Co. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (1990); *Spencer v. J.P. White Bldg.,* 92 N.M. 211, 214, 585 P.2d 1092, 1095 (1978). Under the implied covenant of good faith and fair dealing, courts can award damages against a party to a contract whose actions undercut another party's rights or benefits under the contract. *Watson Truck & Supply Co.,* 111 N.M. at 60, 801 P.2d at 642. Our Supreme Court has nevertheless refused to apply this implied covenant to override an express at-will termination provision in an integrated, written contract. *Melnick,* 106 N.M. at 731, 749 P.2d at 1110; *Bourgeous v. Horizon Healthcare Corp.,* 117 N.M. 434, 438, 872 P.2d 852, 856 (1994).

{6} In *Melnick,* State Farm terminated Melnick's insurance agency contract. *Melnick,* 106 N.M. at 727, 749 P.2d at 1106. The district court directed a verdict for State Farm, concluding that the implied covenant was not violated because State Farm did not act in bad faith. *Id.* The Supreme Court affirmed the district court without regard to the issue of bad faith, concluding solely that the cause of action for breach of the implied covenant did not lie because the employment contract contained an express at-will termination provision contained within a "fully integrated, clear, and unambiguous" contract. *Id.* at 731, 749 P.2d at 1110.

{7} Refusing to vary from the parties' contract, the Supreme Court in *Melnick* reasoned that contractual provisions concerning termination which were not the basis of fraud or unconscionable conduct should be enforced as written and that it could not "change or modify the language of an otherwise legal contract for the benefit of one party and to the detriment of another." *Id.* at 731, 749 P.2d at 1110. The Court noted that an at-will employment contract may be terminated by either an employee or an employer "at any time, for any reason, without liability" in New Mexico and that it was "not inclined to redefine the law of at-will employment contracts." *Id.* at 730, 749 P.2d at 1109.

{8} Plaintiff contends that *Melnick* does not preclude his claim for breach of the implied covenant because the Supreme Court reserved decision on the applicability of "improper motivation, overreaching, or discharge for a reason contrary to public policy." *Id.* at 732, 749 P.2d at 1111. According to Plaintiff, his case is exactly the one the Supreme Court contemplated in which a cause of action for breach of the implied covenant of good faith and fair dealing could be invoked even in an at-will employment contract.

{9} Although we decline to extend *Melnick* as Plaintiff proposes, we can understand Plaintiff's position from the language the Supreme Court used in stating its holding in *Melnick.* The Court appears to "hold" that if Melnick could have shown an "improper motivation, overreaching, or discharge for a reason contrary to public policy," State Farm would have needed to show "good cause or an absence of bad faith" for termination to be proper. *Id.* We interpret this language to mean that State Farm would have been required to show good faith or the absence of bad faith if Melnick had shown the proper elements in a tort action.

{10} At the writing of *Melnick*, the law of at-will employment contracts included *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613 (Ct. App.1983), *reversed in part on other grounds by*, 101 N.M. 687, 687 P.2d 1038 (1984), and *overruled in part on other grounds by Chavez v. Manville Products Corp.*, 108 N.M. 643, 649, 777 P.2d 371, 377 (1989). In that case, this Court recognized the cause of action of retaliatory discharge as a tort when an employer violates a clear mandate of public policy in the termination of an employee. *Arzola*, 102 N.M. at 688, 699 P.2d at 619. This aspect of *Arzola* remains the law in New Mexico. *See, e.g., Garrity v. Overland Sheepskin Co.*, 1996–NMSC–032, ¶¶ 13–27, 121 N.M. 710, 917 P.2d 1382; *Michaels v. Anglo Am. Auto. Auctions, Inc.*, 117 N.M. 91, 92, 869 P.2d 279, 280 (1994); *Chavez*, 108 N.M. at 647–50, 777 P.2d at 375–78.

■ {11} Because the Supreme Court expressly stated that it did not intend to redefine the law in *Melnick*, we do not believe that it intended to infuse the tort of retaliatory discharge into the implied covenant in at-will termination cases. The Court in *Arzola* was clear in its refusal to embrace retaliatory discharge within the scope of a claim for breach of the implied covenant in such cases. *Arzola*, 102 N.M. at 688, 699 P.2d at 619. Indeed, the *Melnick* opinion itself discusses the delicate balance of the interests of employers and employees in employment contracts. *Melnick*, 106 N.M. at 732, 749 P.2d at 1111. The Supreme Court expressed the need for parties to a contract to rely upon basic contractual principles to receive the benefit of their bargain. *Id.* It observed that an implied restriction upon an employer's ability to discharge an employee in an at-will employment relationship "is inherently unsound." *Id.* Thus, we read *Melnick* to hold that when parties have entered into a clear and unambiguous at-will employment agreement, it is improper to invoke the implied covenant of good faith and fair dealing to vary the at-will termination provision in the written agreement. *See id.* at 731, 749 P.2d at 1110.

■ {12} Held up against *Melnick* under this analysis, Plaintiff's case cannot withstand a motion for summary judgment.

Plaintiff's contract to provide professional services as an independent contractor cannot be meaningfully distinguished from the insurance agency contract in *Melnick*. Both involve a written agreement with an express, unambiguous, and clear at-will termination provision. *Id.* Each of these provisions provides for notice to the other party; Plaintiff's agreement entitled either party to 60–days notice of termination, and the *Melnick* agreement required only written notice delivered to the other party. *Id.* Plaintiff does not contend that his agreement was incomplete in any fashion. Therefore, the nature of Plaintiff's agreement does not give us pause in applying *Melnick* to uphold the parties' contractual agreement as to termination and to not interfere with the balance of interests the parties crafted in the description of their bargain. *Id.* at 732, 749 P.2d at 1111.

■ {13} Furthermore, we do not believe that *Bourgeous* aids Plaintiff's position. In *Bourgeous*, our Supreme Court recognized a cause of action for breach of the implied covenant of good faith and fair dealing based on an employment contract which was not at-will, but the Court limited the remedy to contract. *Bourgeous*, 117 N.M. at 438–39, 872 P.2d at 856–57 ("[T]ort remedies are not available for breach of the implied covenant in an employment contract."). Plaintiff argues that *Bourgeous* has similarities to his case because of his claims of improper motive and discharge in violation of public policy. But, as we have discussed, in the at-will employment setting the claim of retaliatory discharge for violation of a clear mandate of public policy may be asserted in tort, not breach of the implied covenant. Indeed, Plaintiff originally brought tort claims against Defendant in another action, but such claims were dismissed in federal court on statute of limitations grounds.

*Conclusion*

■ {14} In *Bourgeous*, our Supreme Court described its holding in *Melnick* both as having "declined to recognize a cause of action in an at-will contract for breach of an implied covenant of good faith and fair dealing," and as having "declined to 'apply an implied covenant of good faith and fair deal-

132

ing to override express provisions addressed by the terms of an integrated written contract.'" *Bourgeous,* 117 N.M. at 438, 872 P.2d at 856 (quoting *Melnick,* 106 N.M. at 731, 749 P.2d at 1110). With this reading of *Melnick,* we cannot agree with Plaintiff that the *Melnick* Court invites us to extend the implied covenant of good faith and fair dealing to cover bad faith conduct of improper motivation, overreaching, or discharge for a reason contrary to a clear mandate of public policy. Consistent with the reasoning of *Melnick,* when the termination is based on an express, unambiguous, and clear at-will termination right, such conduct is only actionable to the extent it constitutes the tort of retaliatory discharge as described in *Arzola.* Therefore, we affirm the district court.

{15} **IT IS SO ORDERED.**

WE CONCUR: M. CHRISTINA ARMIJO, Judge, JONATHAN B. SUTIN, Judge.