## VALENCIA V. SANTA FE POLICE OFFICERS ASS'N

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**JOSE F. VALENCIA,**
**Plaintiff-Appellant,**
**v.**
**SANTA FE POLICE OFFICERS ASSOCIATION, MARK BARNETT, and ALAN LOPEZ,**
**Defendants-Appellees.**

Docket No. A-1-CA-35831
COURT OF APPEALS OF NEW MEXICO
May 30, 2019

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY, Sarah M. Singleton, District Judge

**COUNSEL**

Jose F. Valencia, Santa Fe, NM Pro Se Appellant

Sanchez, Mowrer & Desiderio, P.C., Armand D. Huertaz, Frederick M. Mowrer, Albuquerque, NM for Appellees.

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR: J. MILES HANISEE, Judge, BRIANA H. ZAMORA, Judge

**AUTHOR:** JULIE J. VARGAS

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Plaintiff Jose F. Valencia appeals the district court's order granting summary judgment in favor of Defendants Santa Fe Police Officers Association (the Union), Mark Barnett, and Alan Lopez, and dismissing the matter. Concluding there to be no genuine issues of material fact for trial, we affirm.

## I. BACKGROUND

**{2}** Until his termination in February 2010, Plaintiff was employed by the Santa Fe Police Department, during which time he was a member of the Union. On February 10, 2010, the Santa Fe City Manager notified Plaintiff of his decision to terminate Plaintiff from his position as a detective in the Santa Fe Police Department for providing inconsistent statements during an internal affairs investigation of alleged misconduct.

**{3}** In the Union's collective bargaining agreement (CBA) with the City of Santa Fe (the City), Section 34 provides that "[i]f the [Union] is dissatisfied with the decision of the City Manager with regards to suspensions, demotions, or terminations, it may appeal the decision by serving a written demand for arbitration pursuant to the Arbitration provision of Section 35." Further, "[a]n employee dissatisfied with the decision of the City Manager with regards to disciplinary action other than suspensions, demotions or terminations may appeal the decision at the cost to the employee by serving a written demand for arbitration pursuant to the Arbitration provision of [S]ection 35." Section 35 of the CBA provides the process for filing informal grievances and, in case the grievance is not resolved at the informal grievance level, formal grievances. If the grievance is not resolved at the formal grievance level either, "the grievance may be submitted to final and binding arbitration by the [Union] (but not by the individual employee)[.]" The CBA provides that the Union "has complete discretion as to whether it will demand arbitration or accept the City Manager's response."

**{4}** The Union's bylaws state that the Union "shall establish a program of legal assistance benefits to be administered by the [Union's Executive Board (the Board)] in order to reduce the burden of legal fees and expenses incurred by members for the conduct of their defense in proceedings arising out of, or relating to, the performance of their duties." The bylaws further clarify that the Union "hereby reserves the right to determine if and when a demand for arbitration is appropriate, feasible and economically justified with regards to defensibility of a given case [using a scoring system] based on" (1) the severity of the violation, (2) the employee's disciplinary history, and (3) mitigating circumstances surrounding the violation.

**{5}** Following the grievance process, Plaintiff, on February 12, 2010, wrote to Adam Gallegos, a member of the Board, requesting that the Union "submit a demand for arbitration on [his] behalf, pursuant to the arbitration provision of [S]ection 35 of the CBA." He went on to state that "[i]f you do not respond to this email, it will be assumed that the [Union] has chosen to deny me union representation in this regard." The Board scheduled a meeting on February 16, 2010, to consider Plaintiff's request. Defendants Lopez and Barnett, as the Union's then-President and former President, respectively, recused themselves from the February 16 proceedings as they were the subjects of allegations made by Plaintiff regarding "improper acquisition and use of a cell phone by Union members." Following the meeting, the Board, using the scoring system established in the Union's bylaws, voted to deny Plaintiff's request. Gallegos wrote to Plaintiff, informing him "that the [Union] has voted unanimously not to provide [him] with the representation at arbitration per [his] request."

**{6}**     Rather than requesting that the Union file for arbitration on his behalf but at his expense, Plaintiff wrote to the City Manager, demanding arbitration "pursuant to Section 34 of the [CBA.]" However, the City declined to arbitrate the matter with Plaintiff because the Union had declined to demand arbitration on his behalf.

**{7}**     Plaintiff filed the present action alleging claims for breach of contract, tortious interference with contractual relations, fraud, and breach of the duty to fairly represent. The district court granted summary judgment in favor of Defendants, dismissing all of Plaintiff's claims. This appeal followed.

## II.     DISCUSSION

### A.     Standard of Review

**{8}**     Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. "An issue of fact is 'genuine' if the evidence before the court considering the motion for summary judgment would allow a hypothetical fair-minded factfinder to return a verdict favorable to the non-movant on that particular issue of fact." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 23, 294 P.3d 1276 (internal quotation marks and citation omitted). "We resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Id.* ¶ 22 (internal quotation marks and citation omitted). "Once the movant makes a prima facie case for summary judgment, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts that would require trial on the merits." *Id.* (alteration, internal quotation marks, and citation omitted). "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (alteration, internal quotation marks, and citation omitted). "Rather, the party opposing the summary judgment motion must adduce evidence to justify a trial on the issues." *Id.* (alteration, internal quotation marks, and citation marks omitted). "We review an order granting summary judgment de novo." *Associated Home & RV Sales, Inc.*, 2013-NMCA-018, ¶ 22.

### B.     Breach of Contract

**{9}**     Plaintiff first argues the district court erred in granting summary judgment on his breach of contract claim. Plaintiff argues that in exchange for his union dues, the Union, under the CBA and its bylaws, guaranteed it would either represent him during arbitration or at least demand arbitration on his behalf, creating a contract that the Union breached when it declined to represent Plaintiff. As Plaintiff acknowledged in the district court, the CBA in the present case "is a contract and agreement entered into between the City and the [Union], not between the [Union] and the members." *See Callahan v.*

*N.M. Fed'n of Teachers-TVI* (*Callahan I*), 2006-NMSC-010, ¶ 19, 139 N.M. 201, 131 P.3d 51 (noting a CBA "is a contract between a labor organization and the employer").

**{10}**    Nonetheless, Plaintiff claims he is entitled to bring his breach of contract claim as a third-party beneficiary of the CBA. Plaintiff, however, is unable to demonstrate a genuine issue of material fact for trial that he has an enforceable right under the CBA as a third-party beneficiary against the Union. "[T]o have an enforceable right as third-party beneficiaries against the [u]nion, at the very least the employer must have an enforceable right as promisee[,]" and the third party "would need to assert a promise that [the union] made to [the employer] and subsequently broke." *Id.* ¶ 21 (internal quotation marks and citation omitted). Although Plaintiff argues the Union "guaranteed union representation" in arbitration, Plaintiff has cited no specific provision of the CBA indicating any such promise the Union made to the City that would entitle him to benefit from the agreement between the City and the Union. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review an argument when the factual assertions are made without citations to the record). Indeed, the CBA states that "[i]f the grievance is not satisfactorily resolved [through the formal grievance procedure], the grievance *may* be submitted to final and binding arbitration by the [Union] (but not by the individual employee)[,]" and that "[i]f the [Union] is dissatisfied with the decision of the City Manager with regards to . . . terminations, it *may* appeal the decision by serving a written demand for arbitration pursuant to the Arbitration provision of Section 35." (Emphasis added.) Section 35 of the CBA further provides that the Union "has complete discretion as to whether it will demand arbitration or accept the City Manager's response." As Plaintiff cannot cite any provision in the CBA stating that the Union promised, unqualifiedly and without room for discretion, to represent its members or make demands on their behalf, we conclude the district court did not err in granting summary judgment on the breach of contract claim stemming from the CBA.

**{11}**    With regard to the Union's bylaws, Plaintiff cites no legal authority from which we can conclude a union's bylaws are a contractual agreement between a union and an employer or a union and its members. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Regardless, the Union's bylaws expressly state that the Union "hereby reserves the right to determine if and when a demand for arbitration is appropriate, feasible and economically justified with regards to defensibility of a given case [using a scoring system] based on" (1) the severity of the violation, (2) the employee's disciplinary history, and (3) mitigating circumstances surrounding the violation. In support of its motion for summary judgment, Defendants submitted affidavits from members of the Union's Board. The Board members stated in their affidavits that they considered Plaintiff's request and used the scoring system to reach the decision to deny Plaintiff's request. The only evidence Plaintiff presented to rebut Defendants' evidence was virtually identical affidavits from three police officers and members of the Union who stated that the Board "clearly did not use [the] scoring criteria" because Plaintiff "was never charged with a criminal act, arrested, indicted, arraigned or even questioned in a criminal investigation," and because no documentary evidence was presented for the Board to review. However, these three officers were not

members of the Board and did not attest that they were privy to the Board's evaluation of Plaintiff's request, or that their statements were based on personal knowledge. *See* Rule 1-056(E) (requiring affidavits based on personal knowledge to support a summary judgment motion). As the bylaws reserve unto the Union the right to determine if and when a demand for arbitration is appropriate and Plaintiff presented no competent evidence rebutting the Board members' statements that they used the scoring system required by the Union's bylaws, no hypothetical fair-minded factfinder could infer a breach of a contractual provision to either represent Plaintiff in arbitration or demand arbitration on his behalf. *See Associated Home & RV Sales, Inc.*, 2013-NMCA-018, ¶ 23 ("An issue of fact is 'genuine' if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded factfinder to return a verdict favorable to the non-movant on that particular issue of fact." (internal quotation marks and citation omitted)). Accordingly, we conclude the district court did not err in granting summary judgment on this claim.

## C.     Tortious Interference With a Contract

**{12}**     Plaintiff next contends that the district court erred in granting summary judgment on his claim for tortious interference with a contract. To establish tortious interference with a contract, a plaintiff must prove (1) the defendant "had knowledge of a contract"; (2) "performance of the contract was refused"; (3) the defendant "played an active and substantial part in causing [the plaintiff] to lose the benefits of the contract"; (4) "damages flowed from the breached contract"; and (5) the defendant "induced the breach without justification or privilege." *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 32, 145 N.M. 186, 195 P.3d 353.

**{13}**     Plaintiff argues the Union tortiously interfered with the CBA and the Union's bylaws in denying Plaintiff's request for union representation in arbitration and in refusing to demand arbitration. Here, again, we emphasize the absence of a contract to which Plaintiff was a party or third-party beneficiary on which Plaintiff could base his claim. *See id.* (requiring that a plaintiff show that he lost the benefits of a contract and that the defendant played an "active and substantial part in causing" the loss). For these reasons, we conclude the district court did not err in granting summary judgment on this claim.

## D.     Fraud

**{14}**     Plaintiff also argues the district court erred in granting summary judgment on his claims of fraud against Defendants. "The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the representation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281.

**{15}** Plaintiff asserts the Union fraudulently represented it "would fairly represent its members in exchange for union dues collected, both in collective bargaining proceedings and in disciplinary matters." Plaintiff, however, has failed to identify and present evidence of a misrepresentation on the part of the Union to support his fraud claim. Even if we assume Plaintiff is entitled to rely on the arbitration provisions of the CBA and the bylaws despite the fact that he is not a party to either document, both documents vest the Union with discretion to demand arbitration, and as we previously concluded, Plaintiff has failed to rebut Defendants' evidence that it applied the scoring criteria set out in the bylaws to determine it would not represent Plaintiff or demand arbitration.

**{16}** As to Lopez and Barnett, Plaintiff first argues they fraudulently misrepresented themselves as Union officers in order to obtain cell phones. The district court ruled that Plaintiff did not have standing to raise this claim. We review the question of whether Plaintiff has standing de novo. *See ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 6, 144 N.M. 471, 188 P.3d 1222.

**{17}** New Mexico's standing doctrine requires litigants to allege that "(1) they are directly injured as a result of the action they seek to challenge; (2) there is a causal relationship between the injury and the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision." *Id.* ¶ 1. To establish the first requirement, i.e., an injury-in-fact, "[t]he litigant must show that he is imminently threatened with injury, or, put another way, that he is faced with a real risk of future injury, as a result of the challenged action or statute." *Am. Fed'n of State, Cty. & Mun. Emps., Council 18 v. Bd. of Cty. Comm'rs*, 2016-NMSC-017, ¶ 32, 373 P.3d 989 (internal quotation marks and citation omitted). For the injury to be causally related to the challenged conduct, "[t]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 25, 130 N.M. 368, 24 P.3d 803 (alterations, internal quotation marks, and citation omitted).

**{18}** Plaintiff asserts he has standing to challenge Lopez's and Barnett's efforts to obtain cell phones because, he argues, his subsequent reporting of their actions gave rise to the Union's decision to deny Plaintiff's request for representation. However, Plaintiff fails to demonstrate how Lopez's and Barnett's allegedly fraudulent actions impacted the Union's decision, especially in light of the Board members' unchallenged affidavit statements that neither Lopez nor Barnett "played any role in the . . . Board's consideration of [Plaintiff's] request." We therefore conclude the district court did not err in finding Plaintiff lacked standing to assert a claim of fraud against Lopez and Barnett on his own behalf.

**{19}** A litigant may also bring an action on a third party's behalf if the litigant demonstrates that "(1) the litigant has suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant has a close relation[ship] to the third party; and (3) there exists some hindrance to the third[-]party's ability to protect his or her interests." *ACLU of N.M.*, 2008-NMSC-045, ¶ 12

(internal quotation marks and citation omitted). To the extent that Plaintiff's claim of fraud against Lopez and Barnett is made on the Union's behalf, Plaintiff has not demonstrated whether there exists any hindrance to the Union's ability to protect its interests, and he has therefore failed to establish his standing on the Union's behalf.

**{20}** Plaintiff's second claim of fraud against Lopez and Barnett is that they fraudulently represented Barnett as the immediate past president of the Union so Barnett could have a vote on the Board and thereby influence the Board's decision to grant or deny Plaintiff's request for representation. In light of the Board members' unrebutted affidavit statements that Lopez and Barnett recused themselves from the proceedings in which Plaintiff's request for representation was considered, we conclude Plaintiff failed to establish a genuine issue of material fact for trial showing any detrimental reliance on their purported misrepresentations to the Board. *See Williams*, 2005-NMCA-061, ¶ 34. We therefore conclude the district court did not err in granting summary judgment on this claim.

### E. Duty of Fair Representation

**{21}** Plaintiff's final argument is that the district court erred in granting summary judgment on his claim that the Union breached its duty of fair representation to him. Unions owe their members a duty of fair representation. *See Jones v. Int'l Union of Operating Eng'rs*, 1963-NMSC-118, ¶ 20, 72 N.M. 322, 383 P.2d 571. A union's "duty of fair representation extends beyond the bargaining table to the day-to-day adjustment of working rules and the protection of employee's rights secured by the [CBA]." *Callahan I*, 2006-NMSC-010, ¶ 9 (internal quotation marks and citation omitted). As our Supreme Court explained:

> The union has great discretion in handling the claims of its members, and in determining whether there is merit to such claims which warrants the union's pressing the claim through all of the grievance procedures, including arbitration, and the courts will interfere with the union's decision not to present an employee's grievance only in extreme cases.

*Jones*, 1963-NMSC-118, ¶ 24. Thus, a union's refusal or failure to take a grievance to arbitration must be arbitrary, fraudulent, or in bad faith to constitute a breach of its duty of fair representation. *Callahan I*, 2006-NMSC-010, ¶ 11; *Callahan v. N.M. Fed'n of Teachers-TVI* (*Callahan II*), 2010-NMCA-004, ¶ 12, 147 N.M. 453, 224 P.3d 1258.

**{22}** We understand Plaintiff's duty of fair representation claim to be predicated on (1) Lopez's and Barnett's purported involvement in the Board's decision, as demonstrated "in the audio recording," and (2) the Board's inability, and therefore failure, to use the scoring system because the City had not yet provided the Union with evidence of Plaintiff's misconduct. We first note that Plaintiff did not make the audio recording a part of the record. Thus, the only evidence before us bearing upon Lopez's and Barnett's involvement in the decision-making process was the Board members' affidavits stating that Lopez and Barnett recused themselves from the proceedings in which Plaintiff's

request for union representation was considered, and played no role in the Board's consideration of Plaintiff's request. Moreover, as we have stated above, the Board members expressly stated in their affidavits that they used the scoring system to reach their decision to deny Plaintiff's request, and as set out above, Plaintiff failed to submit competent evidence showing a genuine issue of material fact for trial.

**{23}** Thus, viewing the evidence in the light most favorable to a trial on the merits and resolving all reasonable inferences in Plaintiff's favor, we conclude no hypothetical fair-minded factfinder could determine the Union's decision not to represent Plaintiff was arbitrary. *See Howse v. Roswell Indep. Sch. Dist.*, 2008-NMCA-095, ¶ 8, 144 N.M. 502, 188 P.3d 1253 ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." (internal quotation marks and citation omitted)). Much as Plaintiff has failed to establish a claim of fraud against the Union, he has also failed to establish a claim that the Union fraudulently denied his request for representation. *See Callahan I*, 2006-NMSC-010, ¶ 15 (explaining "that the breach of duty of fair representation requires a showing of arbitrary, fraudulent, or bad faith conduct"). Likewise, Plaintiff has not presented evidence from which a hypothetical fair-minded factfinder could conclude the Union's decision was made in bad faith. *See id.*; *Associated Home & RV Sales, Inc.*, 2013-NMCA-018, ¶ 23. Accordingly, the district court did not err in granting summary judgment on this claim.

**{24}** Because we conclude that Plaintiff failed to present evidence of a genuine issue of material fact for trial, we need not address whether Plaintiff's duty of fair representation claim was timely filed.

## III.    CONCLUSION

**{25}** For the foregoing reasons, we affirm the district court.

**{26}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**BRIANA H. ZAMORA, Judge**